May it please the Court, my name is Douglas Nelson on behalf of the petitioner Hytham Karim Abo. You know, as of today, the U.S. government is not returning anyone to Iraq, no matter whether they're Shia or Sunni or Christian. It doesn't matter if they have an order of removal. It doesn't matter if they have a criminal background. Because the U.S. government recognizes that it's too dangerous to return persons to Iraq today. This is particularly true in the case of a Christian. The petitioner is a Christian, and he submitted a motion to reopen, with numerous documents to prove that there exists a pattern or practice of Muslim terrorists persecuting Christians in Iraq. That included a very special report, the 2006 report from the Department of State, which showed that this pattern or practice existed. Now, the Department of State didn't publish this report for any other group, just for the Christians. And he's proven that. He also supplied the Court with a declaration, which must be taken as true unless inherently unreliable. And in that declaration, he shows or lists the many similarly situated Christians that he personally knows who have been kidnapped, tortured, and murdered in Iraq. Now, this claim could never have been presented to the immigration judge in the first instance, because the decision was made before the March 2003 invasion by American and coalition forces. The petitioner merely wants an opportunity to present this claim to the immigration court. And that has never been done. Now, when we look at the Board's decision, which denied reopening, it's very peculiar, and it leaves me a little bewildered, because it simply says the respondent is ineligible for asylum on discretionary grounds. Now, was that a decision, a finding that the Board made on its own, or are they relating back to the judge's decision? Why wouldn't we assume that it was relating back to the IJ's initial decision? Well, either way, it was wrong. The decision was wrong, because, I mean, if it's the Board's decision, then there's no explanation of the facts. There's no examination of the totality of the circumstances. But if we go back to the judge's decision, there's only one paragraph that discusses discretion. We can forget the adverse credibility finding from before, because that was not the reason the judge denied indiscretion. He denied indiscretion because the respondent traveled through other countries, and he did not avail himself of refugee procedures abroad. The judge also mentioned the doctrine of safe haven, which, after 2001, no longer existed. It was impermissible to deny. And you can't review that determination, because you didn't review it the first time. On the other hand, the changed circumstances, if there were changed circumstances, presumably would be part of any discretionary determination, and they weren't existent at the time. That's exactly right. The immigration judge had an equation before him. He had an applicant from Iraq who feared Saddam Hussein's back party, who went through several countries, came to America. The judge found that his testimony was not persuasive. But the judge never questioned the respondent's Christianity. The equation today is there is a pattern or practice of Muslim terrorists persecuting Christians in Iraq. That's clear from the reports. We have a person who's been in the United States for many, many years now with no criminal history. He's a good and decent member of the community. That's the equation that needs to be evaluated today. Now, in mathematics, when you have an equation and you change one of the numerals, that changes the entire equation and all the theorems based upon that equation. When you change E equals MC squared to E equals MC cubed, well, all the theorems based upon that are thrown out the window. This petitioner is deserving and qualified for under the law a new analysis of his claim because the conditions that arose were not of his doing. If we had before us a pro-Western intellectual from Vietnam who was denied asylum, but then the Vietnam War broke out, we would not return that person to Vietnam. That person would be eligible for asylum. But we don't return those persons for a very important reason. Communists persecuted the characteristics that that person possessed. Here, a new threat has emerged that harms or seeks to persecute the characteristics that Mr. Abbo possesses. And the reason given for the exercise of discretion had to do with his behavior in seeking asylum from the Saddam Hussein regime. So the whole dynamic has basically changed. It's completely changed. All right, so let's go to the merits, then, of the asylum withholding claim. Well, very good. But one quick note. The immigration judge did not have the benefit of the Gula V. Gonzales decision, which is identical to this case. That seems to me to be where you get yourself in trouble because that, it seems to me, to be a final determination. It wasn't a, there was no petition taken. And with regard to that determination, as of that time, I don't see how you can reopen it. But when you have a whole new set of circumstances, a whole new equation to be evaluated. That's a difference. But I don't think how the fact that the law has changed is relevant. I'm sorry, how the law? I don't think the fact that the law changed as to the reason he gave is relevant. I would respectfully disagree, Your Honor. Anecdotally, I've represented Chaldean Christians since 1996. After the 2003 invasion, I've filed maybe 100 of these motions to reopen. Two were rejected, and this is one of them. I understand that point. I'm saying that the fact that it was denied much earlier on a ground that, as to which our law has now changed, has to be out of the equation. Everything else you're saying is worth listening to, okay? Yeah, so we will disagree on that point, Your Honor. But to the merits of the claim, it's the regulations specifically say that if an applicant demonstrates a pattern or practice of persecution, then the person does have a well-founded fear of future persecution. We are not arguing past persecution, obviously. This is clearly a case of future persecution. This has to be grounded, though, on your evidence that there's particular persecution of Christians, yes? If it were generally, if there was just general violence in Iraq, which presumably everyone concedes, that would not, however, be a sufficient ground for your purposes, correct? That's exactly right. And we are not arguing general country conditions. He is not running away from general strife in this country. But rather, the country reports, the nearly 80 pages of articles and the four government reports, in particular the issue paper issued by the Department of State, which specifically addresses Christians, shows that this pattern or practice exists. This has resulted in more than half of the Christian population fleeing Iraq, which is tremendous evidence that the pattern or practice exists. And there's also another analysis we can make, which is whether he has a well-founded fear of future persecution, whether or not a pattern or practice exists. And we need to show at least a 1 in 10 chance that he will be harmed if returned to his country. And that clearly exists in this case, as evidenced, again, by the many Christians who are forced to flee Iraq. If there are no other inquiries, I'd like to reserve my time. Thank you very much. May it please the Court. Lindsay M. Brickmell with the respondent, the Attorney General. I guess I can first address Petitioner's assertion. Contrary to his assertion, before coming to argument, I did contact DHS regarding this matter and regarding even the issue of prosecutorial discretion, which they declined to do. And they also noted that they were able to get travel documents for people going back and forth to Iraq. I'm sorry. I'm not sure what that means. I don't know what that means. Well, no, no. So they could be removed. They could be removed. Yes. The question is, the assertion said they're not being removed. I'm not sure that's relevant, but you're saying it's not relevant. But, no, they are still getting documents and things like that. You know, as far as removing, it just depends on the individual. My understanding is that getting documents isn't the issue. The question is whether, for prudential reasons, i.e., because of the circumstances, they are refraining from removing people, which they have done to certain countries, whether or not they could have removed them if they wanted to. But you're saying they are removing people. As noted by the San Diego office, that's what I was informed. All right. But I don't particularly see the relevance. Okay. And then, well, moving on, and then I first will address the agency's determination that he was denied asylum as a matter of discretion. The Supreme Court, 9S v. Daugherty, basically noted the four different ways that a board can deny any form of relief sought in a motion to reopen. Here, it's a discretionary form of relief, which asylum is. Well, what were they saying? They said they didn't say we are denying it as a matter of discretion. They had this strange sentence that essentially says that he was denied or he is denied. And that's why the motion doesn't address it. But the motion certainly did address it. So what did they mean? Well, as the board noted, that he was, in effect, basically ineligible. But as just – And also, a third thing is, what does it mean to be not eligible as a matter of discretion? That isn't even a sensible sentence because eligible is eligible and discretion is discretion. So I didn't understand the whole sentence. I don't know what it means. Well, I think as we noted in the brief and as noted by – let me go back into the Daugherty argument – is that the board has the ability to review whether or not that, even if the requirements were satisfied for the motion to reopen, even if he had shown, you know, what he'd done, the board can determine whether or not the movement would be entitled to a discretionary grant of relief. But that's not what it said. It said he's not eligible because of – what exactly does the sentence say? That he was not eligible. Right. So that's not an exercise of discretion. It's an assertion that he's not eligible. Correct. And as we argued, we argued that they were basically holding that he was not entitled to the discretionary grant, just as noted in – On their own behalf or because they were – they thought the IJ's decision was final or what? Well, as a review of the record. And the board has the ability to review the record as a whole. So are they doing that or are they simply adopting, saying that the IJ's determination was one that withstood appeal? Well, both the board and this Court, I mean, even though it was a lack of jurisdiction, I mean, it was vetted up here and it was – you know, it's a final decision for that matter that is part of the record and the board – All right. Just be clear about what you're claiming. The sentence is the respondent is ineligible for asylum on discretionary grounds. Therefore, the motion is based on his claim for withholding. I have three problems with those statements.  Two, there is no indication whether they're finding him – they're denying him on discretionary grounds or whether they are saying that the IJ did a long time ago and it's final. And three, they then go on and say the motion – therefore, the motion is based on his claim for withholding, which is not true. The motion itself sufficiently asserted asylum. So what are they saying? I mean, as I stated, I'm trying to be as clear as possible. I mean, we're holding that the courts holding – the Supreme Court's holding in Abudu and in Doherty are applicable in this matter. The board reviewed the motion. He sought the discretionary form of relief as asylum. And they made the determination that he was not entitled to the discretionary relief. Well, if that's what happened, then there's a complete failure to explain themselves and we would have to get an explanation because they didn't say what the discretionary grounds were. They didn't say why they were denying it on discretionary grounds. They said nothing of that kind. Well, in that case – If they were making a decision, then we need to know why. We have no notion why. Very well, Your Honor. And as I stated, I mean, that's – as we argued in our brief, that was our stance in, like, how they interpret it. Okay. Go on. Okay. If I may now address the withholding denial. The board reviewed the evidence and found that, you know, although that there are strife towards Christians, that the evidence submitted as a whole was not sufficient to meet the burden of proof for the petitioner in order to reopen. The board noted that there were – I mean, obviously the country reports and the religious reports note that it's not just the Christians that are being harmed. No, but they all say that there's a particular focus on Christians. I mean, how can you – you just can't ignore that language, can you? Well, no, and the board didn't ignore that language. They said that it was not just towards Christians. It was anybody who opposed the extremist terrorists that were there. I mean, even the respondent notes that anything even American, which a lot of the things he also referred to, it wasn't just Christians. It was, like, association with Americans or being in an American place, which is outside of the claim which he's making. And the petitioner failed to meet this burden, and the record does not have – I'm really having trouble understanding what you're saying. If there was just across the board unfocused violence, and that was all the evidence, that's one thing. If there is evidence of violence that focuses on, say, three groups, and one of them happens to be Christians, what is the fact that there are two other groups that there is focus on matter? Well, no, but he has to show that he was going to be – that there was a pattern of practice, or, in fact, there was – he was going to be either singled out individually to be harmed as a Christian. But doesn't the – it's fairly unusual to have a State Department report about a particular subgroup and their persecution, which we have here. And they're quoting statements that say that although there is widespread attacks on various groups and various minority groups, it's particularly focused on Christians, or the Christians are particularly likely to be persecuted. So why isn't – and, again, what we have here is a – you're filling in what the board said, but the board didn't even say any of that. All they said that there's no evidence presented which would be sufficient to support a conclusion that the respondent is more likely not to be persecuted or tortured in Iraq. That's all they said. They didn't say because there are other groups that are just as likely or because – or anything like that. That is correct. And as I know, I mean, the board basically reviewed the evidence and held that it just wasn't sufficient for the petitioner to meet his burden of proof. Now, you know – What would be? I don't know. I'm not – I mean, if – I mean, State Department country reports are classically relied on by this and every federal court in the United States as the, you know, best evidence of places where, you know, no one's going to go over there and do their own little private investigation to see if it's true. There's also corroboration from the evidence of Christians fleeing the country. What more do you want? Well, no, as I stated, I mean, as the board noted, they reviewed the record as a whole and they found that it was insufficient in order to support – By another, but I'm questioning whether that's an abuse of discretion. Well, we would argue that it wasn't because we would argue that the record, including the previous reports which mentioned Christians and everything else, was just insufficient to show that he had created a pattern of practice or that he would be individualized and persecuted on account of his Christianity. All right. This is in the committee report – in the report on Christians. While much of the hardship and harassment they report that they face is symptomatic of the situation of general insecurity faced by all Iraqis in present-day Iraq, members of the Christian minority nevertheless appear to be particularly targeted. Does the board do anything with that? Tell us why. Well, no, I mean, as apparent, you know, to you as it is to me, I mean, in the decision, I mean, it was relatively, you know, concise in responding to the evidence in the board. If this court were to find that it's insufficient, then it would be required to remand back to the board in order to make a determination regarding that. Okay. Do you think there's any point in sending this case to mediation? Excuse me? Would there be any point in sending this case to mediation? To be? To mediation. To mediation? Yes. It's a possibility. Like I said, I've already contacted the San Diego office before I came here. All right. But it would be definitely a possibility. Okay. Thank you very much. Of course. Briefly, the Christians have lived in this region for thousands of years, for 2,000 years, and half their population didn't flee all those other years. They fled in the last eight years because of what's happening there now. And the evidence is substantial in this case that there exists a pattern of records. The record is basically that half the Christians have left and that half the people who have left are Christians. Is that essentially what the record is? I'm sorry. That half the Christians have left and that half the people who have left are Christians. Something like that. No, half the Christians have left. And I thought it was also that half the people who have left are Christians. No. And that's perhaps your problem, is it not, because there has been substantial flight of non-Christians from Iraq as well, including Muslims, including Kurds, including both Shias and Sunnis, because of the very difficult circumstances existing in that country. Decades of war, terrorist violence, and so forth. So the fact that a substantial number of Christians have fled is by itself not that probative. It's only if it's coupled with the State Department suggestion that the Christians are being particularly focused on that you have an argument that it's corroborative. Yes. Correct. And the reports that are part of this record show that it is the Christians who are fleeing. Nowhere anywhere in these reports or in the government's rebuttal is there any evidence that other populations are leaving in the same numbers or proportional numbers. Actually, the Christian reports, as observers estimate, that as much as 50 percent of the hundreds of thousands of Iraqi refugees being processed in Syria are Christians. Well, as a part of the population of Iraq, which is tens of millions who are mostly Arab and Muslim, that hundred of thousands is less than a percent, as opposed to 50 percent of the Christians. And it's interesting, too, to note that the Sunnis and Shias are generally fighting for power. They're controlling much of the government, whereas the Christians have no power. So why are these two groups focused on targeting the Christians? As that country report says, Christians are perceived as Western and anti-Islam, and they undermine the idea of the radicals who want to establish a pure Islamic state. That is why they're being targeted. Okay. Thank you very much for your argument. Thank you. Thank you both for your arguments. We may ask you to explore our mediation before we submit the case. We sometimes do that. Thank you. The case of Abu versus Holder is submitted.
judges: Rakoff, Berzon, Watford